IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CARL DAVIS, JR.**                                                                                   **PLAINTIFF**
**ADC #80431**

v.                           No: 4:20-cv-00336 JM-PSH

**RORY GRIFFIN,** *et al.*                                                                **DEFENDANTS**

## PROPOSED FINDINGS AND PARTIAL RECOMMENDATION

### INSTRUCTIONS

The following partial Recommendation has been sent to United States District Judge James M. Moody, Jr.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Carl Davis, Jr., an inmate at the Arkansas Division of Corrections' (ADC) Varner Unit, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on March 25, 2020 (Doc. No. 2).  At the Court's direction, he filed an amended complaint (Doc. No. 4).  Davis sued ADC Director Dexter Payne, Warden James Gibson,

Warden James Shipman, ADC Deputy Director Rory Griffin, Dr. Steven N. Stringfellow, Dr. Shannon Wright Clark, Jason M. Kelley, Sondra L. Parker, Lisa Smith, and Cortney Miller.[1]  *Id.*  Davis alleges that he experienced a five-year delay in the making and timely delivery of an upper partial denture.  *Id.* at 4.  He alleges that Griffin and Gibson failed to take corrective action in response to multiple grievances he filed concerning that delay.  *Id.* at 12-14.

On prior motions for summary judgment, the Court dismissed Davis' claims against Payne, Shipman, Kelley, Stringfellow, Parker, and Smith.  *See* Doc. Nos. 90 & 92.  The undersigned has recommended dismissal of Davis' claims against Dr. Wright Clark and Miller.  *See* Doc. No. 120.  This Recommendation addresses Davis' remaining claims against Griffin and Gibson.

Before the Court is a motion for summary judgment, brief-in-support, and statement of facts filed by Griffin and Gibson (Doc. Nos. 105-107).  Davis filed a response and a brief-in-support (Doc. No. 114-115).  Davis did not file a separate statement of disputed facts.  Accordingly, Griffin and Gibson's statement of facts, Doc. No. 110, are deemed admitted.  *See* Local Rule 56.1(c).  Griffin and Gibson's statement of facts, and the other pleadings and exhibits in the record, establish that Gibson is entitled to judgment as a matter of law with respect to Davis' supervisor

---

[1] Davis' claims against defendants Malcom and Duke were previously dismissed due to lack of service.  *See* Doc. Nos. 66 & 75.

liability claims and his corrective inaction claim. However, there remain material issues of fact with respect to Davis' corrective inaction claim against Griffin. Accordingly, the undersigned recommends that the motion for summary judgment be granted in part and denied in part.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment.  The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.  Complaint Allegations & Evidence

### *Davis' Amended Complaint*

In his amended complaint, Davis alleged the following regarding Griffin:

> Defendant Rory Griffin is the Health Care Director of the Arkansas Department of Corrections. . . . Mr. Griffin is liable in this action as a over see'er for gross negligence.  He is a supervisor responsible for his subordinates as trained licensed professionals, who are bound by policies, as actors, functioning under the color of law.  Director Griffin was informed in writing through the grievance procedures, and has filed several responses.  [Grievances #VU-16-01051, VU-17-00515, and VU-18-00412.]  After being informed of the ongoing constitutional violations, he has failed to remedy the wrongs.  Mr. Griffin is also the health authority who is responsible for the development, implementation, and or arranging, all levels of reasonable, and necessary health care for the inmate population.  He is also a part of a custom, under which unconstitutional practices, are occurring, and has allow the continuance.) for unconstitutional neglect, by paying little, or no attention to; and his disregard, has amounted to deliberate indifference to the plaintiff's serious medical need for dental care almost (5) years is excessive to know about, and do nothing to remedy the wrong.  "<u>He too has failed to take corrective action.</u>

Doc. No. 4 at 12-13.[2]  Regarding Gibson, Davis alleged:

> Defendant Warden James Gibson is responsible as a over see'er at the Varner Unit!  . . . Mr. Gibson is responsible for the operations of the Varner Unit, and the welfare of all inmates under the protection of the constitution.  Warden Gibson became aware of the constitutional violations on 3-28-18.  In grievance # VSM 18-00736 and Grievance # VU-17-00515 the complaints put Warden Gibson on notice that unconstitutional practices were occurring.  Giving him first hand knowledge, and with deliberate indifference.  He signed the grievance, and took no corrective action.

---

[2] Davis' complaint and grievances are transcribed verbatim without any corrections for misspellings or mistakes.

*Id.* at 13-14.

### *Shelly Byers Declaration*[3]

In a declaration, Assistant Medical Services Manager Shelly Byers states that Griffin is her supervisor and she is familiar with his job responsibilities as Deputy Director for Health and Correctional Services. Doc. No. 105-1 at 1. Byers explained that in his capacity as Deputy Director, Griffin reviews all inmate grievance appeals regarding medical issues to ensure that policy was followed and that prescribed medical treatment was provided. *Id.* at 2. He determines if such grievances are with merit, but does not second-guess medical decisions made by medical personnel. *Id.* Rather, he reviews the grievance appeals to

> make sure Mr. Griffin (or his designee) understands what the inmate is grieving about, determine what actions have or have not been taken by the medical department, make sure that the medical department has responded, and, if applicable, a plan of action has been created as it relates to the inmate.

*Id.* According to Byers, Griffin will attempt to resolve a grievance that has merit if it has not already been resolved and will bring the issue to the attention of the infirmary personnel if they are not already aware of it. *Id.*

Griffin is not a physician and does not personally provide medical or dental services to inmates. *Id.* According to Byers,

---

[3] Ms. Byers states that Griffin is unavailable to provide a declaration due to non-public issues. Doc. No. 105-1, n. 1.

> Griffin does not: (a) supervise medical or dental staff at the individual units; (b) make treatment decisions for the inmate; (c) schedule medical or dental appointments or arrange transportation of inmates to see medical providers; (d) become involved in the day-to-day delivery of medical or dental care services to inmates, or prescribed medication(s); (e) personally provide medical or dental treatment to inmates; or (f) make clinical recommendations for decisions regarding inmate care.

*Id.* at 3.

Byers stated that according to Davis' electronic medical records, he has received his dentures and was seen by dental services as recently as September 1, 2021. *Id.* at 4.

### *James Gibson Declaration*

Gibson provided a declaration stating that he has been the Superintendent of the ADC's Varner/Varner Super Max Complex for the past four years (*i.e.*, 2017-2021), and has been employed by the ADC for 44 years. Doc. No. 105-2 at 1. He stated that his responsibilities as superintendent or warden are to maintain security and order among other things. *Id*. Gibson is not a physician and does not personally provide medical or dental treatment to inmates. *Id.* He is also not consulted by medical or dental personnel when they are determining whether or not an inmate needs treatment or medications. *Id.* In his role and warden/superintendent, Gibson stated that he does not:

> (a) supervise medical/dental staff at the Varner Unit or the Varner Super Max Complex; (b) make treatment decisions for the inmate; (c) schedule medical or dental appointments or arrange transportation of inmates to see medical providers; (d) become involved in the day-to

day delivery of medical or dental care services to inmates, or prescribed medication(s); (e) personally provide medical or dental treatment to inmates; or (f) make clinical recommendations for decisions regarding inmate care.

*Id.* at 2.

### *Davis' Relevant Grievances*

In his brief in response to Griffin and Gibson's motion for summary judgment, Davis refers to five grievances he filed concerning his delay in receiving dentures. Doc. No. 115. He also referred to a letter he wrote Griffin on March 6, 2020, shortly before he filed this lawsuit, regarding the delay in receiving dental treatment. *See id.* at 5, 12-14. Each grievance is described below.

**VU-16-01051.** Davis submitted this grievance on October 10, 2016, complaining that he had not received the partial denture plate that had been approved the year before. Doc. No. 2 at 26. He claimed that he experienced a great deal of pain and discomfort when eating without the denture. *Id.* The medical department responded:

> A review of your dental record indicates on 7/1/15 Dr. Russell noted the need for you to have a replacement partial. On 8/7/15 the process was started for a replacement partial, and as of 10/4/16 the process had not been completed and a new impression had to be taken due to an ill-fitting partial. Due to the delay in you receiving your partial, I find this grievance with merit.

*Id.* at 28. Davis appealed, stating that as of December 16, 2016, no action had been taken. *Id.* Griffin responded: "A review of your electronic dental record as of

February 2, 2017, you still have not received your partial dentures and there is not documentation that your new impression has been made. This appeal is with merit." *Id.* at 30.

**VU-17-00515.** On July 7, 2017, Davis grieved a lengthy delay in receiving dental treatment, claiming that he could not bite and chew his food properly. Doc. No. 58-3 at 1. He referenced Grievance VU-16-01051 and stated that the problem had been ongoing since July of 2015. *Id.* The medical department responded:

> Your 7/13/2017 grievance has been received and reviewed to determine if medically necessary health care, as determined by your health care providers, has been provided to you. You state that you have experienced a lengthy delay in receiving dental care. A review of your medical record reveals that you were seen by a dental provider on 7/7/2017 and that your issues were addressed at that time. Previous visits revealed no emergent issues that needed to be addressed right away. For these reasons I find your grievance to be without merit.

*Id.* at 2. Davis appealed and reiterated his complaint that it had taken too long to make his dentures. *Id.* Griffin responded:

> Dr. Russell, dentist, noted on July 1, 2015 that you needed a replacement partial. The process for the replacement partial was started on August 17, 2015. Dr. Stringfellow, dentist, noted on October 4, 2016 that your partial would have to be remade due to it not fitting properly. You were seen by Dr. Stringfellow on February 28, 2017 for a broke tooth and he noted for you to be placed on the extraction list and for the impression to be made for your partial after the extraction healed (extraction completed April 11, 2017). You were seen by Dr. Dove, dentist, on July 7, 2017 for complaints of needing a new partial and he noted for you to return for fabrication of new partial. Impressions were made on July 20, 2017 and your partial is being fabricated at the lab.

> Your appeal to grievance #VU-16-01051 was found with merit on February 2, 2017 due to the delay regarding your partial. Due to the continued delay with your partial, this appeal is with merit.

*Id.* at 4.

**VU-18-00412.** Davis submitted this grievance on July 12, 2018, complaining that he had not yet received his dentures approved in 2015 and believed his constitutional rights had been violated. Doc. No. 58-5 at 1. He specifically grieved that Dr. Wright Clark attempted to fit him with the wrong dentures on July 12, 2018, and that he signed for them under duress due to the long wait and pain he endured. *Id.* The response reviewed the dental treatment Davis received from Dr. Wright Clark on July 11 and 17, 2018, and found the grievance without merit. *Id.* at 2. Davis appealed and reiterated his complaints about Dr. Wright Clark and the partial dentures he received. *Id.* at 3. Sandra Stratton found the appeal without merit, citing Dr. Wright Clark's notes from her July 11 and July 17, 2018 encounters with Davis and statements obtained from Dr. Wright Clark and Ms. Miller. *Id.* at 4.

**VU-18-00736.** Davis submitted this grievance on March 2, 2018, stating that it related to "deliberate indifference to a serious dental need in connection to untimely, unreasonable, inappropriate, improper and unsuitable dental care." Doc. No. 58-8 at 1. Davis named Director Wendy Kelley; Rory Griffin; Mr. Kelley, the infirmary manager; Ms. Malcom; Ms. Duke; and Warden J. Shipman. *Id.* He specifically complained about being treated in full restraints. *Id.* The response,

which appears to be signed by a warden (the signature is illegible), addressed only that complaint. *Id.* at 2. There is no record Davis appealed the response. *See* Doc. No. 90 at 17-18; Doc. No. 63-1 at 60 (copy of Davis' grievance record indicating no appeal filed).

**VU-18-00529.** Davis submitted this grievance on September 12, 2018. Doc. No. 58-6 at 1. He complained that Miller believed his improperly fitted dentures were merely a cosmetic issue and requested to be examined by another provider. *Id.* The response addressed his treatment by Dr. Wright Clark on July 11 and July 17, 2018, described her notes, and found the grievance without merit. *Id.* at 2. The response also noted that "Cortney Miller, Dental Assistant, provided a statement supporting what Dr. Wright noted above." *Id.* Davis appealed and repeated his request for a second opinion. *Id.* at 3. The appeal response stated:

> You were seen by Dr. Wright on September 11, 2018 regarding your partial. Dr. Wright noted your partial fit within normal limits and it provided proper function. She noted you would not allow them to reline the partial and that you would not take it. You were seen by Dr. Wright October 31, 2018 and she noted that she was going to reline the partial but the acrylic would be so thick in #15 area where #15 was removed earlier last year. Dr. Wright noted she recommended an extraction for tooth #1 and then new impressions for a new partial.

*Id.* at 5. Griffin found the appeal with merit due to inconsistent information being noted by Dr. Wright regarding his partial dentures. *Id.*

### *Davis' Deposition Testimony*

In his deposition, Davis described his complaint regarding Griffin as follows:

> Mr. Griffin is the healthcare director and is responsible in a traditional concept for failing to remedy a length delay of almost five years where he actually failed to act on information indicating that unconstitutional actions were occurring relating to letters, and among other things, informing him of the dental treatment at the Varner Unit.
>
> And I went on to say that, you know, after contacting Mr. Rory Griffin, you know, he had – I got letters, response to grievances. So, you know, he knew the medical condition and never acted on it. I mean, I'm pretty sure you agree that a delay of almost five years has been unjustified. So, I mean, after knowing about it, I don't understand. . . .

Doc. No. 119 at 39:25, 40:1-11.  He further testified:

> Mr. Griffin, to my understanding, is the ADC healthcare director and is responsible for any kind of unconstitutional acts taken by his employees acting under color of law, you know, as far as the infirmary, dental staff. He was informed of the medical delays and the conflicting problems with the staff through grievance letters. He failed to act. He knew about the situation by his response, but he – wasn't no action never took. I mean, I'm hoping you agree with me that a five-year delay in making a set of dentures is unjustified. . . .

*Id.* at 42:11-19.  Davis acknowledged that Griffin is not a healthcare provider, but stated:

> I think my understanding is he's the health care director and the people that work under him, you know, trained, licensed professionals. And I think he's somewhat responsible for their conduct as professionals, licensed medical professionals. And I think he should recommend some type of discipline or treatment in the course if it's unconstitutional. I mean, he's been informed of the actions, but he never took no action against it.

*Id.* at 42: 23-25, 43: 1-5.

Regarding his claims against Gibson, Davis testified:

> After five years of trying to get a partial made to engage in some normal eating activities, and he's the overseer of the welfare of inmates, don't you agree that he was liable in some kind of traditional concept? I'm thinking that he might have authority to talk to the infirmary manager or at least the healthcare director and ask him, you know, what's wrong with the process. Why is it taking so long? Why was the treatment inadequate?
>
> . . .
>
> . . . I thought maybe the relationship between him and the director of healthcare would come into play. Like, you know, if I reported complaints to him about not receiving adequate timely treatment, and he filed a response in his grievance and to go to the healthcare director and they still don't address it, I mean, you don't think that's indifferent or kind of negligent?

*Id.* at 41:5-22.

### IV. Analysis

**A.    *Sovereign Immunity***

Griffin and Gibson correctly assert that Davis' monetary claims against them in their official capacities are barred by sovereign immunity.[4] A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the undersigned recommends that

---

[4] Griffin and Gibson do not address Davis' claims for injunctive relief. *See* Doc. No. 4 at 24.

Griffin and Gibson be awarded summary judgment with respect to Davis' official capacity claims for money damages.

### B. Qualified Immunity

Griffin and Gibson assert they are entitled to qualified immunity with respect to Davis' individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976). An inmate's Eighth Amendment right to treatment for serious and painful dental conditions is well-established. *Williams v. York*, 891 F.3d 701, 707 (8th Cir. 2018). To succeed with an inadequate medical care claim, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan,* 511 U.S. at 837; *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).

Griffin and Gibson argue that they cannot be held liable merely based on their roles as supervisors. This is correct. The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To state a cognizable claim against a defendant in a supervisory role, an inmate must allege that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action. *See, e.g., Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct

responsibility for, the deprivation of rights.") (internal quotations and citations omitted). Additionally, participation in the administrative grievance process alone is insufficient to establish liability under § 1983. *See Rowe v. Norris*, 198 F. App'x 579, 580 (8th Cir. 2006). Accordingly, to the extent Davis sues Griffin and Gibson solely based on their roles as supervisors, they are entitled to judgment as a matter of law.

Davis also sues Griffin and Gibson for failing to take corrective action after being put on notice that he experienced a significant delay in receiving a prescribed denture. To succeed on a corrective inaction claim, an inmate must prove that the defendant was personally involved in a constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action or tacitly authorized the offending acts. *See, e.g., Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). While an official's participation in the grievance procedure *alone* is insufficient to establish personal involvement, that official's review of grievances may be sufficient to put him on notice of improperly denied medical treatment. *See generally McKenna v. Wright,* 386 F.3d 432, 438 (2d Cir. 2004) ("When allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies

within his supervisory responsibility." (citing *Colon v. Coughlin,* 58 F.3d 865, 873) (2d Cir.1995)). *See also Langford v. Norris*, 614 F.3d 445, 462 (8th Cir. 2010) ("There is no doubt that [the Department of Correction's Administrator for Medical Services] has a constitutional duty to see that prisoners in his charge who need medical care receive it. So if [administrator] knew that [inmates'] serious medical needs were not being adequately treated yet remained indifferent, he may be held personally liable."). The Court finds that questions of fact remain regarding whether Davis had a serious medical need for the partial denture, and whether Griffin, with knowledge of a constitutional violation, and with deliberate indifference, failed to take corrective action.

A delay in receiving prescribed dentures may constitute an objectively serious medical need. *See Mead v. Palmer,* 794 F.3d 932, 936 (8th Cir. 2015) (finding that plaintiff did not have a serious medical need for dentures where he had not been prescribed dentures, had gained weight, experienced only mild discomfort eating, could still eat, and chose not to eat a soft diet); *Campbell v. Dunham*, No. 4:07-CV-00567-JAJ, 2010 WL 7361158, at *5 (S.D. Iowa Oct. 27, 2010).[5] Griffin and Gibson

---

[5] In *Campbell,* the court further explained:

More specific to dentures, courts outside the Eighth Circuit have found that, under certain circumstances, lack of dentures or delay in their production constitutes a serious medical need. *See Maclary v. Allen,* 2005 WL 2978610, at *2 (D. Del. Nov. 7, 2005) (holding that lack of dentures for over a year was a condition which a lay person would easily recognize as needing a dentist's attention, and was thus

have not addressed whether Davis had a serious medical need for his prescribed denture. *See* Doc. No. 106. Davis testified that by not timely receiving the prescribed denture, he had trouble eating and damaged other teeth. *See* Doc. No. 119-1 at 23-24. The degree to which Davis' need for a partial denture constituted a serious medical need is a question of fact that needs further development.

Davis alleges that Griffin was aware of his allegations that he had failed to timely receive a prescribed denture because he reviewed several of his grievance appeals.[6] The record supports Davis' argument – Griffin responded to three of Davis' grievances concerning his dental treatment: VU-16-01051, VU-17-00515, and VU-18-00529. Griffin has provided no evidence that he took any specific

---

    a serious medical need. Furthermore, the prisoner alleged that he was unable to chew his food, significantly hindering his ability to eat and therefore lack of dentures "could be expected to lead to substantial and unnecessary suffering and is thus a serious medical need."); *Gasaway v. Dist. of Columbia,* 1996 WL 225699, at *2 (D .D.C. Apr. 29, 1996) (holding that having no upper teeth and only six lower teeth for 14 months before being provided by the prison with dentures that had been prescribed constituted serious medical need); *Dean v. Coughlin,* 623 F. Supp. 392, 401 (S.D.N.Y.1985) (enjoining prison system to provide adequate care for prisoners' serious dental needs, including the provision of dentures in a timely fashion); *but see Harter v. Davis,* 2008 WL 786742, at *7 (E.D. Mich. Mar. 24, 2008) (granting prison officials summary judgment where medical records belied Plaintiff's claim that he suffered severe symptoms due to lack of dentures for approximately 18 months).

2010 WL 7361158 at *5.

    [6] The Court finds the letter Davis wrote Griffin in March of 2020 insufficient to establish notice for purposes of a correction inaction claim in this case because it was sent too close to the time Davis filed this lawsuit; Griffin would not have had time to take action with respect to that letter.

actions to address Davis' complaints or ensure that he received timely dental treatment, specifically, the upper partial denture prescribed in 2015.  According to Byers' declaration, Griffin's job responsibilities as medical director specifically include ensuring that inmates receive the medical treatment they should and that their complaints are adequately addressed.  *See* Doc. No. 105-1 at 2.  And while Byers states that Davis has now received his denture and recently received dental treatment, there is no proof in the record of when he finally received the correct denture, why there was a significant delay in receiving the denture prescribed in 2015, and what action Griffin took after becoming aware of the delay.  Accordingly, there remain material issues of fact with respect to whether or not Griffin was deliberately indifferent to Davis' serious dental needs, and the motion for summary judgment on this claim should be denied.

Davis also alleges that he made Gibson aware of the delay in dental treatment by way of two grievances, VU-17-00515 and VU-18-00736.  Doc. No. 115 at 6.  However, there is no indication that Gibson reviewed either grievance.  *See* Doc. Nos. 58-3 & 58-8.  Gibson is not named in any of the grievances identified by Davis, including those, and it does not appear he responded to any, except possibly 18-00736.  The warden's signature on that grievance is not clear, but the grievance deals solely with Davis' complaints that he was treated in full restraints and does not describe the delay in receiving a denture.  *See* Doc. No. 58-8.  Finally, unlike Griffin,

Gibson's role as warden does not specifically include ensuring inmates receive appropriate medical treatment; rather, his role is to maintain the "security and order" of the institution. *See* Doc. No. 105-2 at 1. Because Davis has produced no evidence showing that Gibson was put on notice of alleged constitutional violations, Gibson should be awarded summary judgment on Davis' corrective inaction claim.

## V. Conclusion

Griffin and Gibson are entitled to summary judgment on Davis' official capacity claims for money damages and his supervisor liability claims against them in their individual capacities. Gibson is also entitled to summary judgment on Davis' individual capacity corrective inaction claim. However, material issues of fact remain as to whether or not Griffin failed to take corrective action to ensure that Davis' serious dental needs were treated. The undersigned therefore recommends that Griffin and Gibson's motion for summary judgment (Doc. No. 105) be granted in part and denied in part.

SO RECOMMENDED this 7th day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE